**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 24-cv-3274-NYW-CYC

DAVID LINDENBAUM, and
OATMEAL DRAGON LLC,

    Plaintiffs,

v.

ARIELE MYERS,
KALE INOUE,
KOTM, LLC, and
MOON MOTHER INVESTMENTS, LLC.,

    Defendants.

___

**MEMORANDUM OPINION AND ORDER**
___

This matter is before the Court on Defendant Ariele Myers ("Ms. Myers") and Defendant Moon Mother Investments, LLC's ("Moon Mother," and collectively with Ms. Myers, "Myers Defendants") Motion to Dismiss Amended Complaint By Ariel Myers and Moon Mother Investments, LLC ("Myers Motion to Dismiss"), [Doc. 32, filed February 24, 2025], and Kale Inoue ("Mr. Inoue") and KOTM, LLC's ("KOTM," and collectively with Mr. Inoue, "Inoue Defendants," and collectively with Myers Defendants and Mr. Inoue, "Defendants") Motion to Dismiss Amended Complaint ("Inoue Motion to Dismiss," and collectively with Myers Motion to Dismiss, "Motions to Dismiss"), [Doc. 33, filed February 24, 2025].[1]  Plaintiffs have responded to the Motions to Dismiss, [Doc. 37; Doc. 38], and

---

[1] The Inoue Defendants have joined the Myers Motion to Dismiss, [Doc. 34], and the Myers Defendants have joined the Inoue Motion to Dismiss, [Doc. 35]. Accordingly, the Court will consider the Motions to Dismiss as filed by all Defendants.  However, the Court

Defendants have replied, [Doc. 40; Doc. 41]. The Motions to Dismiss are thus ripe for review.

Defendants bring the Myers Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure, [Doc. 32], and the Inoue Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6), [Doc. 33]. Defendants seek dismissal of all of Plaintiffs' claims. [Doc. 32 at 1; Doc. 33 at 3]. Based on the analysis contained herein, the Myers Motion to Dismiss is **GRANTED**, and the Inoue Motion to Dismiss is **DENIED as moot**.

## BACKGROUND

The following facts are taken from the Amended Complaint and Jury Demand ("Amended Complaint"), [Doc. 27, filed February 10, 2025], and are taken as true for the purposes of this Order. This case is rooted in a business dispute regarding the operations of TTH, LLC ("Company"), a company that sells online products. [*Id.* at ¶ 9]. Plaintiffs David Lindenbaum ("Mr. Lindenbaum") and Oatmeal Dragon LLC ("Oatmeal Dragon," and collectively with Mr. Lindenbaum, "Plaintiffs") bring five claims: breach of fiduciary duty against KOTM and Moon Mother ("Claim One"), [*id.* at ¶¶ 58–64]; aiding and abetting breach of fiduciary duty against all Defendants ("Claim Two"), [*id.* at ¶¶ 65–71]; breach of contract against Ms. Myers, KOTM, and Moon Mother ("Claim Three"), [*id.* at ¶¶ 72–78]; fraudulent concealment against all Defendants ("Claim Four"), [*id.* at ¶¶ 79–84]; and civil conspiracy against all Defendants ("Claim Five"), [*id.* at ¶¶ 85–92]. Plaintiffs request three forms of relief: (1) a preliminary and permanent injunction prohibiting Defendants from

---

notes that it does not permit separately represented defendant groups to join each other's filings if it appears that doing so abrogates the page limitations set forth in the Uniform Civil Practice Standards.

paying themselves any further salary or backpay; (2) an award of damages; and (3) an accounting of profits, benefits, and monies obtained by Defendants arising out of the alleged wrongful conduct. [*Id.* at 13–14].

Ms. Myers was the original owner and manager of the Company's business. [*Id.* at ¶ 10]. Mr. Inoue introduced Ms. Myers to Mr. Lindenbaum, a relationship that eventually led to the common ownership of the Company among Ms. Myers, Mr. Inoue, and Mr. Lindenbaum. [*Id.* at ¶ 11]. Mr. Inoue is the sole member of KOTM, LLC, a Colorado LLC, [*id.* at ¶ 5], Ms. Myers is the sole member of Moon Mother, LLC, a Colorado LLC, [*id.* at ¶ 6], and Mr. Lindenbaum is the sole member of Oatmeal Dragon, LLC, a South Dakota LLC, [*id.* at ¶ 2]. At all times relevant to this suit, Mr. Inoue, Ms. Myers, and Mr. Lindenbaum served as managers of the Company. [*Id.* at ¶ 14]. Although the Company's operating agreements set forth the roles of members and managers, the distinction between members and managers was not recognized or respected. [*Id.* at ¶ 15].

Mr. Lindenbaum and Mr. Inoue equally own MCS, LLC ("MCS"). [*Id.* at ¶ 12]. Initially, MCS owned 66.66% of the Company and Ms. Myers owned the remaining 33.33%. [*Id.* at ¶ 13]. This ownership structure was reflected in an operating agreement ("Original Operating Agreement"). [*Id.*]. The Company appointed Mr. Lindenbaum to serve as the Marketing Lead for the Company to generate online sales. [*Id.* at ¶ 16]. Mr. Lindenbaum identified marketing professionals to work as contractors to support the marketing work, and the managers unanimously agreed to hire the contractors. [*Id.*]. When the marketing contractors were hired, Ms. Myers managed the Company finances and contractors sent invoices directly to Ms. Myers, and for two years, Ms. Myers, Mr.

3

Inoue or a third-party bookkeeper made the Company's payments to the contractors. [*Id.* at ¶¶ 18–19]. Mr. Lindenbaum oversaw the work of the contractors. [*Id.* at ¶ 20]. While Mr. Lindenbaum was Marketing Lead, the Company's revenues increased threefold. [*Id.* at ¶ 21].

Mr. Lindenbaum and Mr. Inoue owned a warehouse through another jointly owned company, and the Company used the warehouse as its headquarters but did not pay rent for the warehouse. [*Id.* at ¶¶ 22–23]. MCS offered order-fulfillment services, the Company used such services, and the Company only paid cost for those services, meaning MCS derived no profit. [*Id.* at ¶¶ 24–25]. Several times, Mr. Lindenbaum requested that the Company pay rent to Mr. Lindenbaum and Mr. Inoue's company for the warehouse and pay above cost for MCS's fulfillment services, but Ms. Myers or Mr. Inoue always voted against Mr. Lindenbaum or ignored him each time. [*Id.* at ¶¶ 26–27]. Because of the work he was performing, the low overhead costs, and the Company's revenues, Mr. Lindenbaum also proposed that the managers be paid a salary, but Ms. Myers and Mr. Inoue again ignored or voted against Mr. Lindenbaum's proposals. [*Id.* at ¶¶ 28–29]. Mr. Lindenbaum decided to continue to allow the Company to use the warehouse and MCS's services at an expense to his companies. [*Id.* at ¶ 30].

In early 2024, Ms. Myers requested that the Company amend the Original Operating Agreement to allow her ownership to be held by her newly created company, Moon Mother. [*Id.* at ¶ 32]. After discussion among the members, a new operating agreement was prepared and signed ("Amended Operating Agreement") that changed the ownership structure of the Company. [*Id.* at ¶ 33]. Under the Amended Operating Agreement, Oatmeal Dragon, KOTM, and Moon Mother each became a 33.33% member

4

of the Company. [*Id.*]. Plaintiffs allege that there were "ulterior motives for these changes" that Ms. Myers and Mr. Inoue concealed from Mr. Lindenbaum. [*Id.* at ¶ 34]. After the Amended Operating Agreement was signed, Ms. Myers and Mr. Inoue called a meeting of the members/managers on May 23, 2024 and proposed that Mr. Lindenbaum be removed as Marketing Lead. [*Id.* at ¶ 35]. Ms. Myers and Mr. Inoue caused Moon Mother and KOTM to vote in favor of the proposal over Mr. Lindenbaum's objection through Oatmeal Dragon. [*Id.* at ¶ 36]. This vote would not have been possible prior to the changes to the Original Operating Agreement because Mr. Lindenbaum would have had a 50% vote in MCS when MCS was a 66.66% member of the Company. [*Id.* at ¶ 37].

Plaintiffs allege that the Amended Operating Agreement was intended to erode Mr. Lindenbaum's rights and enable the other members to control the Company and override Mr. Lindenbaum's wishes. [*Id.*]. Ms. Myers and Mr. Inoue intended to act as soon as the Amended Operating Agreement was signed, but they concealed this intention from Mr. Lindenbaum so he would not refuse to sign the Amended Operating Agreement. [*Id.* at ¶ 38]. Ms. Myers and Mr. Inoue stated that Mr. Lindenbaum's removal as Marketing Lead was justified because revenues had dropped significantly during his tenure as Marketing Lead. [*Id.* at ¶ 39]. Plaintiffs allege that this justification was "pretextual and disingenuous" and that the small dip in revenue in early 2024 was insignificant in comparison to the increase from 2021. [*Id.* at ¶¶ 39, 41]. Mr. Lindenbaum inquired as to whether the Company would retain the marketing contractors or would need to otherwise transition marketing efforts. [*Id.* at ¶ 42]. Ms. Myers said she would terminate the contractors and would take over all marketing efforts. [*Id.* at ¶ 43].

Mr. Lindenbaum was effectively "frozen out of any active role in the Company."

5

[*Id.* at ¶ 44].  Two weeks after Mr. Lindenbaum's removal as Marketing Lead, Ms. Myers and Mr. Inoue called another meeting of the members/managers in which they presented a proposal to pay themselves a monthly salary for their work related to the Company.  [*Id.* at ¶ 45].  Ms. Myers and Mr. Inoue caused Moon Mother and KOTM to vote in favor of the proposal.  [*Id.* at ¶ 46].  After obtaining access to the Company's accounts and books, Plaintiffs discovered that Ms. Myers and Mr. Inoue had paid themselves salaries that were vastly disproportionate to any benefit they provided to the Company.  [*Id.* at ¶¶ 48–49].  As a result, Ms. Myers and Mr. Inoue were effectively taking funds that would otherwise be distributed to all members, including Mr. Lindenbaum.  [*Id.* at ¶ 49].  Furthermore, the savings to the Company from Mr. Lindenbaum's companies were not being passed along to him, but instead were being enjoyed by Ms. Myers and Mr. Inoue.  [*Id.* at ¶ 50].

Mr. Lindenbaum also inquired about the Company's finances and discovered that there was a decline in the Company's performance.  [*Id.* at ¶¶ 51–52].  Ms. Myers failed to secure the Company's marketing materials and failed to remove the marketing contractors' access to Company accounts.  [*Id.* at ¶ 53].  As a result, the Company's profits ended up back at the same point, or below, where they were before Mr. Lindenbaum became Marketing Lead.  [*Id.* at ¶ 54].  Ms. Myers and Mr. Inoue then insisted Oatmeal Dragon make a capital contribution to the Company to pay a tax bill.  [*Id.* at ¶ 55].  If Oatmeal Dragon failed to contribute, Ms. Myers and Mr. Inoue threatened to dilute Oatmeal Dragon's share in the Company.  [*Id.*].  Oatmeal Dragon was unwilling to contribute additional capital.  [*Id.* at ¶ 56].

As is pertinent to the issue of diversity jurisdiction, Mr. Lindenbaum is a citizen of New York, [Doc. 7], Oatmeal Dragon is a citizen of New York, [*id.*], and Ms. Myers, Mr.

Inoue, Moon Mother, and KOTM are citizens of Colorado, [Doc. 32 at 6].  Therefore, the Company is a citizen of New York and Colorado.  *See Siloam Springs Hotel*, *LLC v. Century Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015) (stating that a limited liability company takes the citizenship of all of its members).

## LEGAL STANDARDS

A court can dismiss a case under Rule 12(b)(7) if a party fails to join a required party under Rule 19.[2]  *Nat'l Union Fire Ins. Co. of Pittsburgh v. Intrawest ULC*, No. 13-cv-00079-PAB-KMT, 2014 WL 1016072, at *2 (D. Colo. Mar. 14, 2014).  In order to dismiss a case pursuant to Rule 12(b)(7) for failure to join a required party, the court must find that:  (1) the party is a required party; (2) joinder of the party is not feasible; and (3) the action cannot proceed in "equity and good conscience."  Fed. R. Civ. P. 19(a)–(b); *see also Nat'l Union Fire Ins. Co.*, 2014 WL 1016072, at *2; *Entek GRB, LLC v. Stull Ranches, LLC*, No. 11-cv-01557-PAB-KLM, 2013 WL 1283811, at *1 (D. Colo. Mar. 27, 2013).

Courts apply Rule 19(a) to determine if an absent party is a required party.  *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001).  Under Rule 19(a), "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction" is required if one of two considerations is met.  Fed. R. Civ. P. 19(a)(1).  The first consideration is whether, in the absence of the additional party, complete relief can be accorded to the existing parties.  *See Sac & Fox Nation of*

---

[2] Historically, courts referred to parties under Rule 19(a) as "necessary parties"; however, the 2007 amendments changed the term "necessary parties" to "required parties."  Fed. R. Civ. P. 19.  Because "the two words are interchangeable" and to follow the language of the current rule, the Court uses "required party."  *Ward v. Acuity,* No. 21-cv-00765-CMA-NYW, 2021 WL 4947294, at *5 n.5 (D. Colo. Oct. 6, 2021), *report and recommendation adopted*, 2021 WL 5113580 (D. Colo. Nov. 3, 2021).

*Mo. v. Norton*, 240 F.3d 1250, 1258 (10th Cir. 2001). The second consideration is whether disposition of the action without the participation of the additional party would impair, as a practical matter, the existing parties' ability to protect their interests or subject them to "double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B). A party that is required under Rule 19(a) who can be joined should be joined. *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1288 (10th Cir. 2003). If a party cannot be joined, under Rule 19(b), courts consider whether the action can proceed "in equity and good conscience." Fed. R. Civ. P. 19(b); *see also Citizen Potawatomi Nation*, 248 F.3d at 997.

The moving party has the burden of "producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence" of that party. *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994). The moving party may satisfy this burden by providing "affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence." *Id.* (quotation omitted). Courts do not grant a Rule 12(b)(7) motion "on the vague possibility that persons who are not parties may have an interest in the action." *Nat'l Union Fire Ins. Co.*, 2014 WL 1016072, at *2 (quotation omitted). Furthermore, courts are "reluctant to grant motions of this type . . . [and] dismissal is only warranted when the defect is serious and cannot be cured." *Leago v. Ricks*, No. 20-cv-03297-NRN, 2021 WL 1192939, at *6 (D. Colo. Mar. 30, 2021) (quotation omitted).

8

## ANALYSIS

### I. Myers Motion to Dismiss

Defendants offer two arguments in favor of dismissal: (1) the Company is a required party under Rule 19(a), Plaintiffs have failed to join the Company, and joinder is infeasible because it would destroy diversity; and (2) the Court cannot proceed in "equity and good conscience" without the Company because a judgment in the absence of the Company would prejudice the Company and the Parties. [Doc. 32 at 3–9]. Plaintiffs assert that the Company is not a required party because: (1) Plaintiffs bring only direct claims, not derivative claims; and (2) the Company and the Parties will not be prejudiced if the case proceeds without the Company. [Doc. 38 at 2–10]. In their reply brief, the Defendants acknowledge that for the purposes of their Motion to Dismiss, Defendants "do not dispute that Plaintiffs have alleged direct claims," but nevertheless assert that the Company has a competing interest in the direct relief requested. [Doc. 41 at 3–4]. In light of this concession, the Court accepts, without deciding, that the Amended Complaint states a direct claim for each cause of action.

#### A.   The Company Is Necessary Under Rule 19(a)

Under Rule 19(a), a party is required if

> in that [party's] absence, the court cannot accord complete relief among existing parties; or that [party] claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest; or . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a); *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1410 (10th Cir. 1996). Because this Court concludes that the absence of the Company may, as a practical matter, impair or impede its ability to protect its interest and leave it at

9

a substantial risk of incurring inconsistent obligations because of the interest, this Court focuses on this issue.

### 1. Plaintiffs' Derivative Claims are Inextricably Intertwined with Their Direct Claims

As an initial matter, this Court notes that despite Defendants' concession that Plaintiffs plead direct claims in this action, it is also undisputed that Plaintiffs allege and rely upon facts in their Amended Complaint that "are sufficient facts to support both direct and derivative claims." [Doc. 38 at 6]. Specifically, Plaintiffs allege that Defendants proposed the Amended Operating Agreement for the Company to remove Mr. Lindenbaum as Marketing Lead, [Doc. 27 at ¶¶ 35–37], and that he was then effectively "frozen out of any active role in the Company," [*id.* at ¶ 44]. The Amended Complaint spends a considerable amount of time averring facts regarding the mismanagement of the Company, which led to the Company suffering a decline in performance, lost assets due to disproportionate salaries, and lost profits. *See, e.g.*, [*id.* at ¶¶ 47–54]. Ultimately, "the Company performance and profits [were] back at (or below) the levels they were prior to Mr. Lindenbaum becoming the Marketing Lead." [*Id.* at ¶ 54]. Those facts, and the Amended Complaint as a whole, underscore the Company's interest in this action and the fact that any derivative claims are inextricably intertwined with Plaintiffs' direct claims. *Cf. Symes v. Harris*, 472 F.3d 754, 760 (10th Cir. 2006) (holding that the trial court did not abuse its discretion when it found that a corporation formed by a plaintiff was a necessary party due to overlapping individual and corporate claims). Indeed, nothing precludes

either the existing Parties or the Company from initiating a separate action in state court to resolve any derivative claims.

### 2. Prayer for Relief

Plaintiffs request three specific forms of relief: (1) a preliminary and permanent injunction prohibiting Defendants from paying themselves any further salary or backpay; (2) an award of damages; and (3) an accounting of profits, benefits, and monies obtained by Defendants arising out of the wrongful conduct. [Doc. 27 at 13–14]. This Court finds that Plaintiffs' request for injunctive relief and damages reinforces the conclusion that the Company's absence impedes its own ability to protect itself and may leave Defendants subject to substantial risk of incurring inconsistent obligations.

***Preliminary and Permanent Injunction.*** Plaintiffs request a "preliminary and permanent injunction enjoining Defendants from paying themselves any further salary or backpay." [*Id.* at 13]. Defendants argue that an injunction would require the Court to enter an order "compelling [the Company] to stop paying [a] salary." [Doc. 32 at 5]. As Defendants highlight, Plaintiffs point to no authority stating that the Court could enjoin Defendants from paying backpay or salaries without enjoining the Company itself. [Doc. 41 at 5]; *see also* [Doc. 38 at 9].

***Damages Award.*** With respect to damages, Plaintiffs allege that Defendants paid Ms. Myers and Mr. Inoue unjustified salaries whose funds should have been a distribution to the Company's members, including Plaintiffs. [Doc. 27 at ¶¶ 48–49]. Fundamentally, those salaries are derived from Company assets. Indeed, Plaintiffs allege that "Ms. Myers and Mr. Inoue 'discovered' $122,000 in a *Company* PayPal account, which they immediately used for back-pay to themselves for their new monthly salaries," after the

11

Company removed Mr. Lindenbaum as Marketing Lead. [*Id.* at ¶ 56 (emphasis added)]. Defendants contend that the Court's determination of whether a "salaries or other alleged damages constitute a dividend, distribution, or something else is an undetermined fact that impacts [the Company's] interests" and that any salaries should be returned to the Company. [Doc. 41 at 4–5].

This Court respectfully agrees that its determination of whether "salaries or other alleged damages constitute a dividend, distribution, or something else" and whether any mis-paid salaries should be returned to the Company's accounts are "undetermined fact[s] that impact [the Company's] interests." [*Id.*]. There is no indication that those funds are directly attributable to Plaintiffs, particularly given Mr. Lindenbaum's refusal to continue to make continuing capital contributions. *See Am. Est. & Tr. v. Vonfeldt*, No. 20CA1693, 2022 WL 22928019, at *3 (Colo. App. June 16, 2022) (When bringing a direct action, a member "must allege something other than an injury resulting from a wrong to the company."). Instead, any funds that would be recovered if Plaintiffs prevailed would first flow through the Company. *Cf. Tisch v. Tisch*, 439 P.3d 89, 104 (Colo. App. 2019) (whether a corporate distribution is a dividend is determined on a case-by-case basis).

Given these factors, it is difficult to see how the Company will not be bound by a judgment that includes either injunctive relief or damages that requires *the Company* to act or refrain from acting. Accordingly, the Court respectfully concludes that the Company is a required party under Rule 19(a)(1)(B)(i).

### B. The Company is Indispensable Under Rule 19(b)

The Parties do not dispute that joinder of the Company would destroy diversity and thus joinder is not feasible under Rule 19(b). [Doc. 32 at 5–7; Doc. 38 at 2]. Thus, this

Court turns to whether the action can proceed "in equity and good conscience."  Fed. R. Civ. P. 19(b); *see also Citizen Potawatomi Nation*, 248 F.3d at 997.  If the Court concludes that the action cannot proceed as such, it "must deem the absent party indispensable and dismiss the suit."  *Davis v. United States*, 192 F.3d 951, 959 (10th Cir. 1999).  In determining whether it can proceed, the Court must balance four factors:  (1) the prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum.  *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 108 (1968).

"[T]he standards set out in Rule 19 for assessing whether an absent party is indispensable are to be applied in a practical and pragmatic but equitable manner."  *Symes*, 472 F.3d at 760 (quotation omitted).  The Tenth Circuit has stated that "in some cases the interests of the absent person are so aligned with those of one or more parties that the absent person's interests are, as a practical matter, protected."  *Davis ex rel. Davis*, 343 F.3d at 1291–92.  Rule 19(b) "leaves the district judge with substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations."  *Davis v. United States*, 199 F. Supp. 2d 1164, 1176 (W.D. Okla. 2002) (quotation omitted), *aff'd sub nom. Davis ex rel. Davis*, 343 F.3d 1282.

Plaintiffs make no argument regarding the four factors or Rule 19(b), instead stating that "[t]his argument is moot because [the Company] is not a necessary party." [Doc. 38 at 10].  Defendants reference the first and fourth factors.  [Doc. 32 at 7–9].  The Court finds that all four factors weigh in favor of dismissal.

***Prejudice.***  Courts look to this factor as the "first and most important" factor in the indispensability analysis.  *Weber v. King*, 110 F. Supp. 2d 124, 129 (E.D.N.Y. 2000).  Defendants argue that a judgment in the absence of the Company "would prejudice both [the Company] and the existing [P]arties" because "the Amended Complaint alleges wrongful activities and damages directed at [the Company]."  [Doc. 32 at 7].  A reading of Plaintiffs' allegations demonstrates that the Company has an interest in whether any salaries were improperly or disproportionately distributed.  [Doc. 27 at ¶ 49 ("The salaries . . . would otherwise be distributed to all members") (emphasis removed")]; *Weber*, 110 F. Supp. 2d at 130 (concluding that the absent company would be prejudiced if not joined because the plaintiffs had alleged a decline in company performance and revenue).  The Court respectfully concludes that allowing this action to proceed in the absence of the Company would prejudice the Company because the Company could not assert or protect its interests.  The first factor thus weighs in favor of dismissal.

***Shape of Relief.***  For the reasons discussed above with respect to the injunctive relief and damages requested by Plaintiffs, the second factor weighs in favor of dismissal.

***Adequate Remedy and Alternative Forum.***  Here, the third and fourth factors weigh in favor of dismissal.  The Tenth Circuit has stated that the fourth factor, the presence of an alternative forum, is "perhaps the most important . . . [and that] the absence of an alternative forum weighs heavily, if not conclusively against dismissal." *Davis ex rel. Davis*, 343 F.3d at 1293 (cleaned up).  By this action, the Court would not deprive Plaintiffs of an adequate remedy or alternative forum for such claims because Plaintiffs could bring all of their claims in state court.  *U.S. Fire Ins. Co. v. HC-Rockrimmon, L.L.C.,* 190 F.R.D. 575, 577 (D. Colo. 1999) ("Lastly, all of the parties could be given

14

complete relief if this case is filed in state court. This factor appears to weigh heavily in favor of finding that [the Company] is indispensable."). The fourth factor weighs in favor of dismissal.

Based on the analysis contained herein, the Myers Motion to Dismiss is **GRANTED** and this action is dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(7). As a result, the Inoue Motion to Dismiss is **DENIED as moot**.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) The Motion to Dismiss Amended Complaint by Ariele Myers and Moon Mother Investments, LLC [Doc. 32] is **GRANTED;**

(2) This action is **DISMISSED without prejudice** pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure;

(3) Defendants Kale Inoue and KOTM, LLC's Motion to Dismiss Amended Complaint [Doc. 33] is **DENIED as moot**;

(4) Defendants are awarded costs under Rule 54 and D.C.COLO.LCivR 54.1; and

(5) The Clerk of Court is **DIRECTED to TERMINATE** this case.

DATED: September 29, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge